J-S14038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS GEORGE STANKO | : | No. 881 WDA 2021 |

Appeal from the Order Entered June 30, 2021
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0005589-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS STANKO | : | |
| | : | |
| Appellant | : | No. 882 WDA 2021 |

Appeal from the Order Entered June 30, 2021
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0001820-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS GEORGE STANKO | : | |
| | : | |
| Appellant | : | No. 883 WDA 2021 |

Appeal from the Order Entered June 30, 2021
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0001943-2018

J-S14038-22

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED: June 6, 2022**

In these consolidated appeals, the Commonwealth challenges three orders of the Court of Common Pleas of Westmoreland County (trial court) dismissing with prejudice the offenses charged at the above-captioned docket numbers because the speedy trial periods had elapsed pursuant to Pa.R.Crim.P. 600. The Commonwealth argues that the trial court abused its discretion by not excluding from its computation of time the days that Thomas George Stanko (Stanko) spent in federal custody. We affirm.

**I.**

Prosecutors in Westmoreland County charged Stanko in three separate matters on July 24, 2017 (case number 5589 C 2017); January 21, 2018 (case number 1943 C 2018); and April 12, 2018 (case number 1820 C 2018).[1]

While these three cases were still pending, on December 12, 2018, Stanko was indicted in the United States District Court for the Western District

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] At case number 5589 C 2017, Stanko was charged with simple assault (18 Pa.C.S. § 2701(a)(1)), harassment (18 Pa.C.S. § 2709(a)(1)), and disorderly conduct (19 Pa.C.S. § 5503(a)(1)). At case number 1820 C 2018, Stanko was charged with receiving stolen property (18 Pa.C.S. § 3925(a)). At case number 1943 C 2018, Stanko was charged with operating a vehicle not equipped with ignition interlock (75 Pa.C.S. § 3808(a)(1)), improper changing of lanes (75 Pa.C.S. § 3309(1)), operating a vehicle without functioning headlights (75 Pa.C.S. § 4303(A)), and operating a vehicle without adequate restraint systems (75 Pa.C.S. § 4581(a)(ii)).

- 2 -

of Pennsylvania at 403 MD 2019 and charged with being a felon in possession of a firearm and ammunition (18 U.S.C. § 922(g)). On December 14, 2018, a United States magistrate judge entered a writ of *habeas corpus ad prosequendum* "for Initial Appearance set for 1/15/2019." This writ directed that Stanko would be taken into federal custody to ensure his presence at a hearing on January 15, 2019, at the end of which Stanko would be returned to the custody of Westmoreland County. Pursuant to the federal writ, Stanko was taken into federal custody on the day of the hearing on January 15, 2019. It appears that federal authorities housed Stanko in the Allegheny County jail for that proceeding, which was held in Pittsburgh.

On January 18, 2019, the trial court entered a transport order directing the Superintendent of the Allegheny County jail to ensure Stanko's presence in Westmoreland County for a status conference concerning case number 1943 C 2018. The transport order provided further that Stanko would be "returned to the Allegheny County Jail upon completion of the [s]tatus [c]onference unless he or she is no longer subject to a sentence to be served with the Allegheny County Jail or the court orders otherwise." Trial Court Transport Order, 1/18/2019, at 1 (case number 1943 C 2018).

Stanko was returned without incident to the custody of Westmoreland County on January 24, 2019, so that he could appear for his status conference on February 15, 2019. Sometime after that date, Stanko went back into

federal custody, where he has remained.[2] The trial court entered a writ of *habeas corpus ad prosequendum* on June 19, 2019, directing that Stanko be brought to Westmoreland County for a preliminary hearing on an unrelated case (403 C 2019) on June 21, 2019, but he was not made available.

The record is sparse concerning the relationship between the federal and county charges, but there is enough information to glean that during all of those prosecutions, Stanko was suspected of having some connection to the murder of his ex-girlfriend, Cassandra Gross, who has been missing since April 2018. No one has yet been charged in connection with her death.

On October 29, 2020, Stanko moved to dismiss three of his Westmoreland County criminal cases, arguing that the prompt trial periods

---

[2] The parties dispute the means by which Stanko was turned over to federal authorities at this time. The defense argued (and the trial court agreed) that the record did not establish exactly how or when Stanko went into federal custody after the February 15, 2019 status conference in Westmoreland County. The Commonwealth has argued that the trial court's January 18, 2019 transport order is what precipitated the custody change, but that characterization is dubious. The trial court ordered that Stanko would be sent to "the Allegheny County Jail" after his status conference in Westmoreland County had concluded. By moving Stanko from one *county* facility to another, the trial court clearly did not intend for Stanko to be confined indefinitely in *federal* custody while the county cases were pending. The trial court certainly had no cause to suspect that federal authorities would permit Stanko's transport on the one occasion and then never again while the federal charges were pending. Additionally, Stanko's transport to the Allegheny County jail appeared to be conditioned in part on Stanko being "subject to a sentence" in that particular jurisdiction – a fact which the record does not establish. Thus, the record is silent as to why the Commonwealth lost and could not regain custody of Stanko from that point forward.

had elapsed.[3]  He claimed that the Commonwealth had violated Rule 600, which requires the Commonwealth to bring defendants to trial within 365 days of the date that the charges were filed.  The trial court held an evidentiary hearing on Stanko's motion on December 18, 2020.  Stanko was not present at the hearing, as he remained in federal custody.

Initially, the Commonwealth noted Stanko's absence at the hearing and called into question "the efficacy, wisdom, and knowing, intelligent, and voluntary nature" of the motion to dismiss in light of the fact that the three cases were being used as "[bargaining] chips in Mr. Stanko's negotiation process" in the federal matter.  Hearing Transcript, 12/18/2020, at pp. 2-3. After accepting that Stanko nevertheless intended to seek dismissal, the Commonwealth attempted to prove its due diligence[4] with four pieces of evidence:

> (1) The federal writ of *habeas corpus ad prosequendum* entered on December 14, 2018, intended to secure Stanko's presence at a preliminary hearing concerning the federal case on January 15, 2019;
>
> (2) A docket entry from June 19, 2019, recording the trial court's writ of *habeas corpus ad prosequendum*, intended to secure Stanko's presence at a preliminary hearing on June 21, 2019,

---

[3] The fourth Westmoreland County case, docketed case number 403 C 2019, is not at issue in the present appeals.

[4] As will be discussed in greater detail below, a delay in the proceedings which occurs despite the Commonwealth's exercise of due diligence cannot be included in the speedy trial computation.

concerning an unrelated case (the fourth in Westmoreland County) docketed at case number 403 C 2019;

(3) A brief email sent by a United States Marshal to county prosecutors on the day Stanko moved for dismissal, advising that "[p]er the order on the attached writ, Stanko will remain in [federal custody] until disposition of his fed charges," at which time "he will be returned to Westmoreland County custody accompanied by a USMS Judgment and Commitment detainer"; and

(4) A federal docket showing that Stanko had been actively litigating his case in that jurisdiction.

Hearing Transcript, 12/18/2020, Commonwealth Exhibits 1-4.

Based on the pendency of the federal case and the apparent unwillingness of federal authorities to transfer Stanko to Westmoreland County, the Commonwealth argued that none of the resulting delays in Stanko's cases were attributable to the prosecution for the purposes of Rule 600. Along the same lines, the Commonwealth argued that the federal writ of *habeas corpus ad prosequendum* "trumped" the rival writ filed by the trial court in case number 403 C 2019, making it futile for the Commonwealth to try to secure Stanko's presence.

Defense counsel countered that the Commonwealth was responsible for the delays in bringing Stanko's county cases to trial. According to defense counsel, the district attorney had "turned away the prosecution that could've been here, because the [alleged weapon possession] was allegedly here in Westmoreland County on the guns that were charged." *Id*. at p. 11. In other words, defense counsel identified the unusual circumstances of the state and

federal cases as evidence that the Commonwealth was attempting to keep the county charges pending for as long as possible. Defense counsel argued that the scant evidence of due diligence offered by the Commonwealth demonstrated its lack of genuine interest in taking the cases to trial.

On June 30, 2021, the trial court entered orders in all three cases granting Stanko's Rule 600 motions. After adjusting the respective run dates of each case based on delays attributable to the defense and other excusable delays, the trial court found that the Commonwealth's lack of due diligence during Stanko's federal custody had stalled the trials beyond their adjusted run-dates, warranting dismissal. The Commonwealth timely appealed, and it was then directed to submit a concise statement of errors as to all three orders it had challenged. *See* Pa.R.A.P. 1925(b). On August 12, 2021, the Commonwealth timely submitted its 1925(b) statements, each of which included one identical issue:

> 1. The trial court erred by failing to exclude or excuse from the computation of time pursuant to Pa.R.Crim.P. Rule 600(A) and (C)(1) the period of time after February 15, 2019 where [Stanko] was in federal custody and unavailable to the [trial court].

Commonwealth's 1925(b) Statements, 8/12/2021, at 1-2.

The trial court entered three substantially similar 1925(a) opinions on November 29, 2021. As to the Commonwealth's evidence of due diligence, the trial court commented:

> The Commonwealth has presented no explanation for when, how, or why Stanko was transferred to federal custody after he was returned to state custody for his in-person appearance in this

- 7 -

court on February 15, 2019. This lack of curiosity on the part of the Commonwealth and its apparent lack of recognition that it has an obligation to provide an answer to this Court identifying the legal authority for the defendant's subsequent return to federal custody is consistent with its failure to provide evidence documenting its efforts to effect progress in the defendant's prosecution in state court[.]

Trial Court 1925(a) Opinion, 11/29/2021 at 8 (case number 5589 C 2017).

The trial court then expanded in its finding that the Commonwealth had made an insufficient showing of due diligence after federal authorities had taken custody of Stanko on February 15, 2019:

After Stanko's removal from the Westmoreland County Prison, the Commonwealth did absolutely nothing to assert the state's primary jurisdiction, to secure Stanko's presence for numerous hearings in this matter, or to challenge the removal of the defendant from state custody. The Commonwealth rather clearly allowed the defendant to remain in the custody of another jurisdiction while it stood idly by.

Throughout, while professing an inability to obtain custody of Stanko for his appearance before this Court, the Commonwealth never asserted its primary jurisdiction to challenge the federal government's unauthorized seizure and detention of the defendant; nor did the Commonwealth ever seek a writ of *habeas corpus ad prosequendum* in this case for the purpose of obtaining custody of Stanko (either through its primary jurisdiction or even temporarily for the purpose of appearing at a hearing before this Court in order to further the progress of the prosecution). This stance is anathema to the Constitution's guarantee of a speedy trial and to Rule 600 which implements the protection for this very important right.

*Id*. at 11 (paragraph indentation added).

Apart from its finding that the Commonwealth did not prove due diligence, the trial court made a separate determination of "misconduct" and an "abuse of power" by the District Attorney's Office of Westmoreland County.

- 8 -

*See generally id*. at 25-26.[5]  The trial court inferred from the record and "extended observation of the Commonwealth's representatives" that prosecutors may have assisted or allowed the federal government's seizure of Stanko "in the hopes that they could develop a case of homicide against [him]" and use the county cases as bargaining "'chips' "in plea negotiations."  *Id*. The trial court surmised that the county prosecutors were strategically dragging the cases out so that Stanko would remain in custody for as long as the murder investigation required.  *Id*.

The trial court was also concerned that the email from the United States Marshal introduced by the Commonwealth "was generated at the request of the Commonwealth *after* Stanko's Rule 600 motion was filed in order to create a 'paper trail' which did not otherwise exist."  *Id*. at 21 (emphasis in original). The trial court found this to be a misleading attempt to demonstrate due diligence, *see id*., and the Commonwealth has since conceded that it "sought documentation of the Marshal's position on the matter for purposes of presenting it to the trial court."  Appellant's Brief, at 15-16.

In its appellate brief, the Commonwealth included a statement of questions involved which mirrored its 1925(b) statements.  *See* Appellant's

---

[5] The trial court stressed that the standard for finding prosecutorial misconduct is "not the yardstick for measuring due diligence under Rule 600."  Trial Court 1925(a) Opinion, 11/29/2021, at 25 (case number 5589 C 2017).  The trial court's dismissal of the cases, therefore, did not hinge on the findings of misconduct or intentional delay by the Commonwealth.

Brief, at 1. However, in the body of the brief, the Commonwealth argued for the first time that the trial court was bound by contemporaneous continuance orders excluding Stanko's time in federal custody and that the resulting delay should have been excluded from the speedy trial calculations. The Commonwealth also argued for the first time that the finding of prosecutorial misconduct "as the justification [for the dismissals] establishes that the [trial court] was predisposed to dismiss these charges, but forced to manipulate the record in order to achieve that end." Appellant's Brief, at 13.

In response, Stanko contends that the Commonwealth has waived all of its appellate claims because its Rule 1925(b) statements lacked sufficient specificity to preserve any of the issues raised on appeal. Stanko also maintains that dismissal was proper because the trial court correctly found that the Commonwealth had failed to prove it exercised due diligence while he remained in federal custody.

Significantly, the Commonwealth and Stanko seem to agree that it is dispositive in all three appeals whether, for the purposes of Rule 600, the time Stanko spent in federal custody was properly excluded from the speedy trial calculations. Since Stanko has been in federal custody for over a year, a period which exceeds the speedy trial period, our adjudication as to that disputed period necessarily controls the outcome of all three appeals.

## II.

The Commonwealth's central contention is that the trial court abused its discretion in finding that delays in bringing Stanko to trial were attributable to the Commonwealth despite that, during the relevant periods, Stanko was being held in federal custody. Two subsidiary issues of that general claim are (a) whether the trial court's prior continuance orders excluding the relevant periods of federal custody were binding in the absence of subsequent evidence of Stanko's availability, and (b) whether the trial court's findings, including the determination of prosecutorial misconduct, stemmed from the trial court's bias against the Commonwealth.

## A.

Pennsylvania's prompt trial rule affords defendants charged with criminal offenses the right to be brought to trial within 365 days of the filing of the complaint. *See* Pa.R.Crim.P. 600(A)(2)(a). The computation of the speedy trial period does not include delay caused by the defendant's unavailability or other delays which occurred despite the Commonwealth's exercise of due diligence. *See* Pa.R.Crim.P. 600(C)(1)-(2); *see also* *Commonwealth v. Thomas*, 879 A.2d 246 (Pa. Super. 2005) (same).

In determining whether the Commonwealth has exercised due diligence, the courts have explained that the inquiry "is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort."

*Commonwealth v. Selenski,* 994 A.2d 1083, 1089 (Pa. 2010). It is the Commonwealth, not the defendant, who bears the "burden of demonstrating by a preponderance of the evidence that it exercised due diligence." *Commonwealth v. Bradford*, 46 A.3d 693, 701 (Pa. 2012).

A defendant may be deemed unavailable to stand trial if he is being detained in another jurisdiction. *See Commonwealth v Williams*, 896 A.2d 523, 537 (Pa. 2006); *Commonwealth v. Woods,* 663 A.2d 803, 807–08 (Pa. Super. 1995); *Commonwealth v. DeMarco,* 481 A.2d 632, 635–37 (Pa. Super. 1984); *see also* Comment to Pa.R.Crim.P. 600 ("[T]he defendant should be deemed unavailable for the period of time during which the defendant contested extradition, or a responding jurisdiction delayed or refused to grant extradition . . . or during which the defendant was absent under compulsory process requiring his or her appearance elsewhere in connection with other judicial proceedings.").

However, for the purposes of Rule 600, it is still incumbent on the Commonwealth to demonstrate regular due diligence *throughout* the period in which the defendant is held in another jurisdiction's custody. *See Commonwealth v. McCafferty*, 363 A.2d 1239, 1241 (Pa. Super. 1976) ("There is no question, therefore, that the duty imposed on the Commonwealth . . . to bring a defendant to trial within the prescribed period is not affected by the fact of his incarceration elsewhere or by his failure to demand trial."); *Commonwealth v Alexander*, 464 A.2d 1376, 1382 (Pa.

Super 1983) (same); **Commonwealth v. Haynes**, 488 A2d 602, 604-05 (Pa. Super. 1985) (same).

The Commonwealth's bare assertion or subjective belief that a defendant is unavailable in another jurisdiction does not satisfy the due diligence requirement of Rule 600. **See Commonwealth v. Colon**, 87 A.3d 352, 359-61 (Pa. Super. 2014); **Commonwealth v Thompson**, 136 A.3d 178 (Pa. Super. 2016) (same). By the same token, "a failure to keep adequate records of its efforts to secure [a defendant's] presence at trial militates against any conclusion the Commonwealth acted with due diligence." **Thompson**, 136 A.3d at 184; **see also Commonwealth v. Morgan**, 239 A.3d 1132 (Pa. Super. 2020) (vacating judgment of sentence on speedy trial grounds where Commonwealth did not demonstrate a reasonable effort to secure defendant's transfer while he was held in another jurisdiction).

The standard of review as to a ruling on a Rule 600 motion is whether the trial court abused its discretion. **See Commonwealth v. Hunt**, 858 A.2d 1234, 1238 (Pa. Super. 2004). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." **Id**. (quoting **Commonwealth v. Jones**, 826 A.2d 900, 907 (Pa. Super. 2003) (*en banc*)). The record facts must be viewed on appeal

"in the light most favorable to the prevailing party." ***Id***. (quoting ***Commonwealth v. Jackson***, 765 A.2d 389, 392 (Pa. Super. 2000)).

**B.**

Here, we find that the trial court did not abuse its discretion in concluding that the Commonwealth failed to exercise due diligence in bringing Stanko to trial during the time he was being held in federal custody (from February 15, 2019 until the date the Rule 600 motions were filed on October 29, 2020). The Commonwealth offered minimal evidence at the hearing on the Rule 600 motions that it took reasonable measures during that period to secure Stanko's presence. The Commonwealth's evidence was limited to a federal writ; a docket entry recording a writ entered in Westmoreland County in an unrelated case; the email sent to county prosecutors on October 29, 2020, by a United States Marshal declining extradition; and the docket concerning Stanko's federal case.

The federal writ was intended to secure Stanko's presence for one preliminary hearing on January 15, 2019. After that preliminary hearing took place, he was successfully transported back to Westmoreland County. Stanko was then again sent back to federal authorities on February 15, 2019, and the record reflects that the Commonwealth did next to nothing from that point on. No explanation has been given as to how the federal writ remains in force despite the completion of its mandate; why Stanko could be transported to

Westmoreland County once in early 2019 but not thereafter; and what the Commonwealth did afterwards to honor Stanko's speedy trial rights.

The Commonwealth points to the October 29, 2020 email it received from a United States Marshal as proof of due diligence and Stanko's unavailability, but this correspondence instead supports the trial court's conclusion.  The email provides no context into the Commonwealth's efforts for the preceding *year-and-a-half* in which Stanko was held in federal custody – the email chain and any related correspondence was curiously omitted from the Commonwealth's exhibit.  The trial court also correctly observed that the email was sent on the same day that Stanko's Rule 600 motions were filed, making it reasonable to infer that the Commonwealth had made a token effort of contact with federal authorities to give the appearance of due diligence. The Commonwealth has since conceded that it only obtained this email in response to Stanko's Rule 600 motions.

Additionally, the United States Marshal's professed authority for keeping Stanko in custody for as long as needed to resolve his case (the federal writ) did not actually confer such powers and, yet, the Commonwealth meekly accepted the refusal to transport Stanko as the final word in the matter.  One would think that if the Commonwealth was really set on bringing Stanko to

trial, it would have at some point conferred with a federal prosecutor or filed a motion in the district court for him to be brought to Westmoreland County.[6]

The Commonwealth's rather flimsy pretext for its consistent inaction supports the trial court's conclusion that the Commonwealth failed to prove its due diligence during Stanko's time in federal custody. **See** 1925(a) Opinion, at 21. Thus, the trial court did not abuse its discretion in granting dismissal.[7]

## C.

As for the Commonwealth's first sub-issue regarding the trial court's continuance orders excluding the periods of federal custody from the speedy

---

[6] The federal docket introduced by the Commonwealth would only be arguably probative of its due diligence or Stanko's unavailability if the Commonwealth had demonstrated that it had sought to have Stanko transferred to Westmoreland County at times that unavoidably overlapped with federal litigation. No such showing was made here.

[7] The present matters are distinguishable from the facts of **Commonwealth v. Thomas**, 879 A.2d 246 (Pa. Super. 2005), which the Commonwealth discusses in its brief. **See** Appellant's Brief, at 10-11. In **Thomas**, this Court held that the trial court did not abuse its discretion in finding that the Commonwealth acted with due diligence when it formed an "understanding" with the federal government that the defendant would be released to state custody once sentencing had concluded in the federal case. **See** 879 A.2d at 252. **Thomas** is inapplicable because the trial court had determined that the Commonwealth acted with due diligence "during this time period" of federal custody. **Id**. By contrast, the Commonwealth never offered proof of any such understanding in the instant cases. The Commonwealth insists it was powerless to act once Stanko went into federal custody, but it supported that claim with a single communication between prosecutors and a United States Marshal that was sent only *after* the speedy trial periods had already elapsed.

trial computation, we find that the claim was not preserved for appellate review, and that even if it was properly raised, the issue is meritless.

A party is precluded from obtaining appellate relief as to claims of error that have not been adequately preserved for review. Generally, an issue is preserved for purposes of appeal if it is raised before the trial court in the first instance. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Where the trial court has directed the filing of a statement of issues complaining of on appeal, any issue not included in the statement is waived. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also* Pa.R.A.P. 1925(b)(4)(v) (issues included in the statement will be deemed to encompass all subsidiary issues which had already been "raised in the trial court"). "The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court." *Commonwealth v. Leaner*, 202 A.3d 749, 765-66 (Pa. Super. 2019).

The only issue identified in the Commonwealth's 1925(b) statements is whether the trial court erred in excluding Stanko's time in federal custody from the Rule 600 calculations. At the hearing held on December 18, 2020, the Commonwealth did not argue that the trial court was bound by earlier continuance orders excluding from the Rule 600 computation the time Stanko was in federal custody or that any particular delays were attributable to the defense. Neither the trial court's continuance orders nor the respective county

- 17 -

dockets were admitted into evidence, and the record cannot be supplemented with those documents on appeal. ***See Commonwealth v. Entz***, 888 MDA 2019 (Pa. Super. June 12, 2020) (unpublished memorandum decision) (affirming dismissal where Commonwealth had not admitted into evidence documentation of its efforts at the Rule 600 hearing). Thus, the sub-issue is now waived.

Even if the Commonwealth had preserved the claim that the trial court was bound by its earlier continuance orders, the issue would lack merit. Rule 600(C)(b) provides that the grant or denial of a continuance "is subject to review" by the trial court in the event that a motion to dismiss is filed by the defendant. ***See*** Pa.R.Crim.P. 600(D)(3). Once Stanko filed Rule 600 motions in his cases, and the trial court was given the benefit of an evidentiary hearing and arguments from counsel, it would have been fully within the trial court's discretion to reconsider its earlier orders in light of the complete record and conclude that due diligence had not been proven. Thus, the Commonwealth's first sub-claim was waived, and regardless, no relief would be due even if it had been preserved for review.

## D.

Finally, the second of the Commonwealth's two sub-issues is that the trial court abused its discretion because it was "predisposed to dismiss these charges, but forced to manipulate the record in order to achieve that end." Appellant's Brief, at 13.

This issue is preserved because the trial court's finding of prosecutorial misconduct first appeared in its 1925(a) opinions, and the Commonwealth disputed that finding at the earliest opportunity. *See Commonwealth v. Poncala*, 915 A.2d 97, 105 (Pa. Super. 2006) ("[T]he issue Appellant raised on appeal is properly before this Court, because Appellant's claim is in direct response to the trial court's Rule 1925(a) opinion and raised at the first opportunity Appellant could raise the issue.").

Under our standard of review, the orders of dismissal must be affirmed as long as there is some evidence in the record which supports an impartial finding that the Commonwealth failed to exercise due diligence during the period in question. *See Hunt*, 858 A.2d at 1238. As the trial court noted in the present cases, and as our Supreme Court has made clear, "our speedy trial decision turns solely on whether the Commonwealth exercised due diligence," so "'we need not consider whether there exists misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused.'" *Colon*, 87 A.3d at 360 (quoting *Bradford*, 46 A.3d at 703).

In our discussion above, we explained that the trial court did not abuse its discretion with respect to its findings on due diligence because there was no competent record evidence that the Commonwealth made reasonable efforts to secure Stanko's presence at the relevant times. This finding compels

the affirmance of the dismissals under our standard of review. **See Colon**, 87 A.3d at 360.

Nevertheless, the Commonwealth argues that the trial court's finding of prosecutorial misconduct reveals that it "was predisposed to dismiss these charges" and had to "manipulate the record in order to achieve that end." Appellant's Brief, at 13. We find no merit to this claim of judicial bias because the trial court made its finding of misconduct by drawing reasonable inferences from the record evidence:

• The Commonwealth admitted that it elicited an email from a United States Marshal only after Stanko moved for dismissal so that the email could be used as proof of due diligence;

• The Commonwealth oddly referred to the three pending county cases as bargaining "chips"; and

• The Commonwealth demonstrated the ability to transfer Stanko from federal custody to Westmoreland County without incident in January 2019, disproving the claim that it was impossible for him to be transported.

Just as importantly, it was a glaring absence of evidence which made it reasonable for the trial court to infer that the delays of Stanko's cases were due to a "misuse of the power of the office of the district attorney." Trial Court Opinion, 11/29/2021, at 25-26. The trial court noted that no adequate explanation was ever given for how Westmoreland County lost custody of Stanko in February 2019. The Commonwealth identified no evidence of the steps it took between the time Stanko was taken into federal custody and the date he filed his motions to dismiss on October 29, 2020. Indeed, the

Commonwealth's last-minute effort on that same date (finally contacting the United States Marshal) would reasonably suggest that the prosecutors themselves were concerned about the lack of proof showing their due diligence in the preceding period.

Moreover, we emphasize that the trial court was rightfully skeptical of the Commonwealth's insistence that it had no power to compel Stanko's presence in Westmoreland County:

> After Stanko's removal from the Westmoreland County Prison, the Commonwealth did absolutely nothing to assert the state's primary jurisdiction, to secure Stanko's presence for numerous hearings in this matter, or to challenge the removal of the defendant from state custody. The Commonwealth rather clearly allowed the defendant to remain in the custody of another jurisdiction while it stood idly by. Throughout, while professing an inability to obtain custody of Stanko for his appearance before this Court, the Commonwealth never asserted its primary jurisdiction to challenge the federal government's unauthorized seizure and detention of the defendant; nor did the Commonwealth ever seek a writ of *habeas corpus ad prosequendum* in this case for the purpose of obtaining custody of Stanko (either through its primary jurisdiction or even temporarily for the purpose of appearing at a hearing before this Court in order to further the progress of the prosecution).

Trial Court Opinion, 11/29/2021, at 12.

After reviewing the record, the briefs and the applicable law, we conclude that the Commonwealth's claim of judicial bias is completely unfounded. The trial court acted within its discretion in granting dismissal and, thus, the orders on review must stand.

Orders affirmed.

Judge McLaughlin concurs in the result.

Judge McCaffery concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2022